

**ORDERED in the Southern District of Florida on August 7, 2018.**

Erik P. Kimball, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

RIO MALL, LLC,                             Case No. 18-17840-EPK

    Debtor.                                Chapter 11
_____/

### INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL

**THIS MATTER** came before the Court for hearing initially on July 9, 2018, adjourned to August 1, 2018, upon the *Expedited Motion for Authority to Use Cash Collateral* [ECF No. 9] (the "**Motion**") filed by Rio Mall, LLC (the "**Debtor**") for authority to use Cash Collateral on an interim basis pursuant to Bankruptcy Rule 4001(b) and 11 U.S.C. §363(c)(2)(B). At the August 1, 2018 hearing, the Court also considered the *Objection to the Use of Cash Collateral* filed on behalf of National Commercial Builders, Inc. ("**NCB**") [ECF No. 34] ("**NCB Objection**").

**FINDINGS**

A.    <u>Notice and Hearing</u>. Notice of the Motion pursuant to Federal Rule of Bankruptcy Procedure 9006(c) for the preliminary hearing on the Debtor's Motion for use of Cash Collateral

has been served in accordance with §102(1) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b), which notice is appropriate in the particular circumstances and is sufficient for all purposes under the Bankruptcy Code and the applicable Bankruptcy Rules in respect to the relief requested.

B.  Chapter 11 Filed.  Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code on June 28, 2018 (the "**Petition Date**") and is presently operating as a debtor-in-possession in accordance with §§1107 and 1108 of the Bankruptcy Code. No trustee, examiner or statutory committee has been appointed. This Case involves single asset real estate as defined in 11 U.S.C. §101(51B).

C.  Pre-Petition Debt to Investors Bank.  Debtor obtained a loan from Investors Bank (the "**Bank**") on December 14, 2015 in the original principal amount of $9,800,000 (the "**Loan**"), evidenced by a Promissory Note (the "**Note**") and secured by and pursuant to: a Mortgage and Security Agreement dated December 14, 2005 by which Bank was granted a first mortgage on the Debtor's real property known as the Rio Mall and located at 3801 Route 9 South, Tax Lots 5 and 10 in Block 1450, Township of Middle Township (Rio Grande), Cape May County, New Jersey (the "**Real Property**") and a first perfected security interest in all other non-real estate assets of the Debtor; and an Absolute Assignment of Leases and Rents (the "**Assignment**") dated December 14, 2015 (collectively, the "**Pre-Petition Loan Agreements**").

D.  Pre-Petition Collateral and Status of Loan.

(i) The Bank has, and the Debtor has acknowledged and agreed that the Bank has, as of the Petition Date, a valid and subsisting first mortgage on the Real Property, an absolute assignment of and security interest in all rents and other amounts arising from leases for the Real Property and a perfected first lien and security interest in all of Debtor's other assets including the Debtor's

2

accounts, inventory and the proceeds thereof (the "**Pre-Petition Collateral**").  The Pre-Petition Collateral includes Cash Collateral (as that term is defined in Section 363(a) of the Bankruptcy Code.

(ii)  Bank gave, and Debtor received, pre-petition notice of default and acceleration of the Loan due to Debtor's failure, *inter alia*, to pay the Loan in monthly installments pursuant to the Note and real estate taxes on the Real Property, consequently interest on the principal balance of the Loan accrues at the default rate specified in the Pre-Petition Agreements. The Debtor's indebtedness to the Bank (as of July 24, 2018) is $9,251,387.44, consisting of principal ($8,788,047.07) together with accrued interest ($245,990.62), escrow shortage for real estate taxes advanced by the Bank ($142,333.96) together with fees, costs and attorney's fees (through June 30, 2018 of $75,015.79)("**Bank Debt**").  The Bank Debt is not subject to defense, offset or counterclaim of any kind or nature and that Bank Debt is an allowed, fully secured claim under §§506(a) and 502 of the Bankruptcy Code.

(iii) The determination and findings in Paragraphs D(i) and (ii) shall be binding upon the Debtor, but shall not bind any Creditors' Committee or successor-in-interest to the Debtor, who shall have sixty (60) days after appointment (or such longer period as the Committee may obtain for cause shown before the expiration of the such period, subject to the right of the Bank to object to such request),  to contest the scope, validity, perfection and/or amount of the Bank's claim. Whether or not a Committee is appointed, any party-in-interest has 75 days (or a longer period for cause shown before the expiration of such period) from the entry of this Interim Order to contest the scope, validity, perfection and/or amount of the Bank's claim.

E.	Cash Collateral.  "Cash Collateral" is defined by §363(a) of the Bankruptcy Code to include post-petition proceeds, products, rents, or profits of property. The Real Property is currently

occupied by the following tenants, each pursuant to a written lease: Frank Theatre; Konsole Gaming; Save-A-Lot; and Rent-A-Center. The rents and other amounts payable by these and any prior tenants (including Kmart) constitute Cash Collateral of the Bank. Debtor's Cash Collateral is subject to the first perfected security interest in favor of Bank as provided in §552(b) of the Bankruptcy Code and as the term "proceeds" is described in NJSA 12A:9-306.

F.      <u>National Commercial Builders</u>.  In the NCB Objection, NCB objects to the Debtor's use of Cash Collateral.  As set forth in the NCB Objection, NCB is the holder of an alleged construction lien, junior in priority to the lien of the Bank, encumbering the Real Property.  However, NCB has not alleged, or proffered or otherwise presented evidence of, NCB's interest in *Cash Collateral*. Accordingly, NCB's Objection will be overruled.

G.      <u>Necessity and Best Interest</u>.  The Debtor does not have sufficient unencumbered cash or other assets with which to continue to operate its business in Chapter 11.  The Debtor requires immediate authority to use Cash Collateral in order to continue its business operations without interruption toward the objective of formulating an effective plan of reorganization.  Debtor's use of Cash Collateral to the extent and on the terms and conditions set forth herein is necessary to avoid immediate and irreparable harm to the estate pending a subsequent interim hearing authorizing use of Cash Collateral. The amount of Cash Collateral authorized to be used pending the second interim hearing or entry of a subsequent order is not to exceed, on a line item by line item basis, the amounts reflected in the Debtor's budget, attached as <u>Exhibit A</u>, for the time period from the Petition Date through September 30, 2018 (the "**Cash Collateral Budget**"), plus a variance not to exceed ten per cent (10%) of each line item expense category so long as the total of all amounts in excess of all line items for the Cash Collateral Budget do not exceed ten (10%) percent in the aggregate of the total Cash Collateral Budget.

H.      Prior Use of Cash Collateral With Consent of Bank.  Between the Petition Date and entry of this Interim Order, Debtor used Cash Collateral with the consent of the Bank to pay the necessary July operating expenses identified on the Cash Collateral Budget ("**Prior Expenses**"). Debtor and Bank acknowledge that this Interim Order is applicable to Debtor's use of Cash Collateral to pay the Prior Expenses.

I.      Purposes.  From the Petition Date until September 30, 2018, the Debtor is authorized to use Cash Collateral to meet the ordinary cash needs of the Debtor (and for such other purposes as may be approved in writing by the Bank) for the payment of actual expenses of the Debtor, as specifically reflected in the Cash Collateral Budget on a line item by line item basis, necessary to (a) maintain and preserve its assets, (b) continue operation of its business, including real estate taxes, maintenance and insurance expenses as reflected in the Cash Collateral Budget and  (c) accrue and pay quarterly fees to the Office of the United States Trustee.

Based upon the foregoing facts, upon the consent of Investors Bank, for the reasons stated on the record, and being otherwise fully advised in the premises, it is **ORDERED AND ADJUDGED** that:

1.      Use of Cash Collateral.  The NCB Objection [ECF No. 34] is **OVERRULED**. The Motion [ECF No. 9] is **GRANTED** on an interim basis in accordance with the terms of this Interim Order. The Debtor is authorized, for the period ending on September 30, 2018, to use Cash Collateral for each line item identified in the Cash Collateral Budget attached as **Exhibit A**, plus a variance not to exceed ten per cent (10%) of each line item expense category so long as the total of all amounts in excess of all line items for the Cash Collateral Budget do not exceed ten (10%) percent in the aggregate of the total Cash Collateral Budget, for the following purposes:

   a.      maintenance and preservation of its assets;

      b.      the continued operation of its business, including but not limited to real estate taxes, maintenance and insurance expenses; and

      c.      accrual and payment of quarterly fees to the Office of the United States Trustee.

Bank may consent in writing to further uses of Cash Collateral by the Debtor for unforeseen expenses and any use of Cash Collateral pursuant to any such consent shall be otherwise be subject to this Interim Order. Debtor may also seek emergent approval from the Court for additional use of Cash Collateral and Bank shall have the right to object to any such application to the Court.

    2.    <u>Reporting</u>

      a.      By the tenth (10th) day of each calendar month (beginning August 10), Debtor shall provide a report to the Bank, with a copy to the U.S. Trustee, showing actual disbursements in comparison to the Cash Collateral Budget for the immediately preceding calendar month. The monthly report shall also show the opening balance of accounts receivable (identified by tenant) as of the 1st day of the calendar month and the amounts of accounts receivable (identified by tenant) during the calendar month.

      b.      The Debtor shall provide to the Bank all other reports required by the Pre-Petition Loan Agreements and any other reports reasonably required by the Bank, as well as copies of the Debtor's monthly United States Trustee operating reports, which shall be delivered to the Bank simultaneously with transmittal to the U.S. Trustee.

      c.      At the next interim hearing scheduled by this Interim Order, Debtor shall present the Court with an itemization of those disbursements of Cash Collateral that it paid from the Petition Date through the return date.

      d.      Upon appointment of a Creditor's Committee, the Debtor shall submit a

copy of the monthly United States. Trustee operating reports and all reports remitted to the Bank as required by this Interim Order to counsel to said committee if counsel has been appointed, and until counsel is retained, to the chairman of said committee.

    3.    <u>Adequate Protection</u>.  As adequate protection for use of Cash Collateral from the Petition Date:

    a.    <u>Replacement Lien</u>.  Notwithstanding the provisions of §552(a) of the Bankruptcy Code, and in addition to the security interests preserved by §552(b) of the Bankruptcy Code, the Bank is hereby GRANTED a replacement perfected security interest under §361(2) of the Bankruptcy Code to the extent the Bank's Cash Collateral has been or is used by the Debtor, to the extent and with the same priority in the Debtor's post-petition collateral (and proceeds thereof) that the Bank held in the Debtor's Pre-Petition Collateral;

    b.    <u>Statutory Rights Under §507(b)</u>.  To the extent the adequate protection provided for hereby proves insufficient to protect the Bank's interest in and to the Cash Collateral, the Bank shall have an administrative expense claim, pursuant to §507(b) of the Bankruptcy Code.

    c.    <u>Deemed Perfected</u>.  The replacement lien and security interest granted herein is automatically deemed perfected upon entry of this Interim Order without the necessity of the Bank taking possession, filing financing statements, mortgages or other documents. Although not required, upon request by the Bank, Debtor shall execute and deliver to the Bank any and all UCC Financing Statements, UCC Continuation Statements, Certificates of Title or other instruments or documents considered by the Bank to be necessary in order to perfect the security interests and liens in the Debtor's post-petition collateral and proceeds granted by this Interim Order, and the Bank is authorized to receive, file and record the foregoing at the Bank's

own expense, which actions shall not be deemed a violation of the automatic stay.

        d.    <u>Adequate Protection Payments</u>: The entry of this Interim Order is without prejudice to the right of the Bank to seek adequate protection if Debtor seeks to extend use of Bank's Cash Collateral beyond September 30, 2018 or if there is a change in the financial condition of the Debtor.

        f.    <u>Credit Bids</u>.  The Debtor acknowledges and agrees that the Bank shall have the right to credit bid the Bank Debt under the Pre-Petition Loan Agreements, in whole or in part, in connection with any sale or disposition of assets of the Debtor (whether or not such asset sale or disposition is undertaken or proposed under or pursuant to the terms of any consensual or nonconsensual (including under §1129(b)(2)(A)(i), (ii) and/or (iii) of the Bankruptcy Code) Chapter 11 plan of reorganization or liquidation of or for the Debtor, whether proposed by the Debtor, the Creditor's Committee or any other party, by motion under Section 363 of the Bankruptcy Code, or otherwise under applicable law) and the Debtor hereby waives all rights to oppose such credit bid rights of the Bank.  This paragraph does not bind any party other than the Debtor.

4.    <u>Creditor's Rights of Inspection and Audit</u>.  Upon reasonable notice by the Bank, Debtor shall permit the Bank and any of its agents reasonable and free access to the Debtor's records to verify the existence, condition and location of collateral in which the Bank holds a security interest and to audit Debtor's cash receipts and disbursements.

5.    <u>Interlocutory Order and No Modification of Creditor's Adequate Protection</u>. This is an interlocutory order. Nothing contained herein shall be deemed or construed to (a) limit the Bank to the relief granted herein; (b) bar the Bank from seeking relief from the automatic stay, dismissal or conversion of this Case, transfer of this Case to another venue or other relief; (c) bar

the Bank from seeking relief from the terms of this Interim Order for cause shown on appropriate notice to the Debtor and other parties-in-interest entitled to notice of same; (d) require the Bank to make any further loans or advances to the Debtor; or (e) limit or preclude the Bank from contesting the Debtor's continued use of Cash Collateral beyond the duration of this Interim Order. Modification of this Interim Order may be sought for cause shown by the Debtor, the Bank or any other party-in-interest on due notice. No such modification, however, shall modify, amend, or deprive the Bank of its interest in Debtor's property (pre-Petition and post-Petition) and the Bank's rights under Paragraph 3 of this Interim Order unless expressly agreed by the Bank.

6. <u>Termination Events</u>.

a. The Debtor's authority to use Cash Collateral is terminated upon the first occurrence of any of the following subject to subparagraph 6.b.:

1. the conversion of this case to a Chapter 7 of the Bankruptcy Code;

2. the appointment of a Chapter 11 Trustee;

3. the failure to make adequate protection payments to Bank;

4. violation of any of the terms in this Interim Order; or

5. the absence or lapse of any liability or property and casualty insurance policies currently held by Debtor.

b. If a Termination Event or default occurs, the authority to use Cash Collateral shall terminate upon five (5) days' notice to the Debtor, U.S. Trustee, Chapter 11 Trustee if any, and Creditors' Committee if one exists. Notwithstanding the foregoing, in the event Debtor defaults or violates this Interim Order, the Bank is entitled to request a hearing on short notice as provided by section 7 below.

7. <u>Bank's Right to Request a Hearing on Short Notice.</u>  Bank shall have the right to request a hearing, on short notice, on the Debtor's continued use of Cash Collateral in the event of any Termination Event as defined in Paragraph 6 with notice to be provided to the Debtor, the U.S. Trustee, and the Creditor's Committee if in existence or if not in existence, the top 20 creditors of the Debtor as scheduled in this Case.

8. <u>Application of Interim Order to Payment of Prior Expenses</u>.  The authority for Debtor to use Cash Collateral and the rights of Secured Party granted by this Interim Order are applicable to Debtor's use of Cash Collateral (with the consent of Bank) for payment of the Prior Expenses.

9. **<u>INTERIM HEARING ORDER.</u>**  A second interim hearing in accordance with Bankruptcy Rule 4001(b)(2) shall be held  at  **1:30 p.m. on the 26th day of September, 2018** at the United States Bankruptcy Courthouse, Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor, Courtroom B, West Palm Beach, Florida 33401, at which time the Court shall consider Debtor's request for continued use of Cash Collateral, and any objection, answer or other responsive pleading to the aforesaid Motion shall be filed with the Clerk of the Bankruptcy Court on or before September 19th, 2018, and simultaneously served upon counsel for Debtor and counsel for the Bank (Dilworth Paxson LLP, attention Harold G. Cohen, LibertyView Suite 700 457 Haddonfield Road, Cherry Hill, NJ 08002 and Gary M. Freedman, P.A., BROAD AND CASSEL LLP, One Biscayne Tower, 21st Floor, 2 S. Biscayne Boulevard,

10. Notice.  The Debtor serve a copy of this Interim Order and Notice by first class mail within one (1) business day from the date hereof, on (1) the United States Trustee; (2) the District Director of the Internal Revenue Service; and (3)  counsel to any committee appointed under §1102 of the Bankruptcy Code, if one has been appointed and if not, to Debtor's twenty

(20) largest Rule 1007(d) creditors.  Debtor shall immediately file with the Clerk a Certificate of Service of said mailing.

# # #

Submitted by:

Eric Pendergraft, Esq.
Counsel for the Debtor
2385 N.W. Executive Center Drive, Suite 300
Boca Raton, Florida 33431
Telephone: (561) 443-0800
Direct Line: (561) 433-0818
Facsimile: (561) 998-0047

Copy to:  Eric Pendergraft.

*Eric Pendergraft is directed to serve a copy of this Order upon all interested parties and to file a certificate of service.*

# Exhibit A

120278161_1

## RIO MALL, LLC
**Statement of Projected Income and Expenses- Cash Basis**
**For The Period July 1, 2018 through September 30, 2018**

| | | July | August | September | |
|---|---|---:|---:|---:|---|
| **Revenue:** | | | | | |
| | Rent - Theatre | $ 35,489.00 | $ 35,489.00 | $ 35,489.00 | |
| | Rent - Konsole Gaming | 1,200.00 | 600.00 | 600.00 | new tenant - June and July rent due |
| | Rent - Save A Lot | 0.00 | 3,131.00 | 3,131.00 | 9,365 rent deposited directly into Investors Bank accoun |
| | Rent - Rent A Center | 0.00 | 9,365.00 | 9,365.00 | reduced rent of 3,131 - being deposited directly into Investors Bank accoun |
| | Rent - Kmart | 0.00 | 0.00 | 0.00 | base rent 48,327 - have not paid since 4/1 - July would be their final paymen |
| | Total rent collected | **36,689.00** | **48,585.00** | **48,585.00** | |
| **Occupancy** | | | | | |
| | RE Taxes & Assessments | 0.00 | 48,225.00 | 0.00 | next tax payment due 8/1/18 - estimated 48,225 |
| | Licenses & Permits | 0.00 | 0.00 | 0.00 | |
| | | 0.00 | 48,225.00 | 0.00 | |
| **Utilities** | | | | | |
| | Gas & Electric | 1,800.00 | 1,800.00 | 1,800.00 | |
| | Water | 1,810.00 | 1,810.00 | 1,810.00 | |
| | | 3,610.00 | 3,610.00 | 3,610.00 | |
| **Security** | | | | | |
| | Fire Alarm Security | 0.00 | 0.00 | 0.00 | |
| | | 0.00 | 0.00 | 0.00 | |
| **Maintenance** | | | | | |
| | Landscape Maintenance | 2,100.00 | 2,100.00 | 2,100.00 | |
| **Repairs** | | 240.00 | 240.00 | 240.00 | |
| | | 240.00 | 240.00 | 240.00 | |
| **Insurance** | | | | | |
| | General Liability | 10,000.00 | 10,000.00 | 10,000.00 | |
| | Property | 4,000.00 | 4,000.00 | 4,000.00 | |
| | | 14,000.00 | 14,000.00 | 14,000.00 | |
| **General & Administrative** | | | | | |
| | United States Trustee fee | 0.00 | 0.00 | 975.00 | |
| | | 0.00 | 0.00 | 975.00 | |
| **Total Costs & Expenses** | | **19,950.00** | **68,175.00** | **20,925.00** | |
| **Earnings (loss) from operations** | | $ 16,739.00 | $ (19,590.00) | $ 27,660.00 | |
| DIP Account balance - beginning of month | | $ - | $ 64,009.00 | $ 44,419.00 | |
| Transfer of oparating account cash to DIP account | | 47,270.00 | - | - | |
| DIP Account balance - end of month | | $ 64,009.00 | $ 44,419.00 | $ 72,079.00 | |

| | | |
|---|---:|---|
| **Estimated cash in Investors Bank account as of 6/28/18** | $ 34,774.00 | last statement received was 4/30/18 and account not showing at onlline banking |
| **July rent deposited by Rent A Center & Save A Lot** | 12,496.00 | assuming these were received by Rio Mall operating account at Investors Bank |
| **Estimated cash in Investors Bank account as of 7/28/18** | **$ 47,270.00** | account not visible through online banking - spoke to branch manager 7/9 & 7/10 to email to me |